**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KERRY KOTLER,**

                          **Plaintiff,**

   vs.                                                        9:09-cv-01443
                                                                   (MAD/ATB)

**BRIAN FISCHER, Commissioner, NYS**
 **Department of Correctional Services;**
**ROBERT WOODS, Superintendent, Upstate**
**Correctional Facility; MARIAN B. TIRONE,**
**Deputy/Acting Superintendent, Upstate**
**Correctional Facility; KAREN BELLAMY,**
**Director of Inmate Grievance Program for DOCS;**
**C. GREGORY, Supervisor, Inmate Grievance**
**Resolution Committee, Upstate Correctional**
**Facility; D. QUINN, Captain, Upstate Correctional**
**Facility; R. LAMORA, Lieutenant, Upstate**
**Correctional Facility; and ANTHONY ANNUCCI,**
**Executive Deputy Commissioner for D.O.C.S.,**

                          **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**KERRY KOTLER**
**97-A-6645**
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**             **MICHAEL G. McCARTIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

In a complaint dated November 13, 2009, Plaintiff *pro se* seeks monetary damages and injunctive relief pursuant to 42 U.S.C. § 1983, for alleged violations of his constitutional rights while he was incarcerated by the New York State Department of Correctional Services ("DOCS").[1]  *See* Dkt. No. 1.  Primarily, Plaintiff claims that he was subjected to retaliation and denied due process by various DOCS employees in connection with a disciplinary proceeding conducted at Upstate Correctional Facility ("Upstate") in 2007.  *See id.*

In an Amended Report-Recommendation dated January 31, 2012, Magistrate Judge Baxter recommended that the Court deny, without prejudice to renewal, the summary judgment motion as to the due process claims against Defendants LaMora and Quinn.  *See* Dkt. No. 85 at 2. Further, Magistrate Judge Baxter recommended that the Court grant Defendants' summary judgment motion as to all remaining claims and Defendants, including Plaintiff's retaliation claims against Defendants Gregory, Bellamy, LaMora, Quinn and Annucci.  *See id.*

Currently before the Court are Defendants' objections to Magistrate Judge Baxter's January 31, 2012 Amended Report-Recommendation.  *See* Dkt. No. 86.

## II. BACKGROUND

In May 2007, Plaintiff was transferred to Upstate, for alleged disciplinary infractions not related to the instant claims.  At that time, Plaintiff had an unrelated civil rights action and a number of grievances pending against DOCS employees other than the named Defendants in this

---

[1] On April 1, 2011, DOCS and the New York State Division of Parole were merged into one agency, named the New York State Department of Corrections and Community Supervision. Since the events relevant to this suit occurred before the merger, the Court will refer to New York State's corrections agency as "DOCS."

2

action. *See* Dkt. No. 79-1 at ¶¶ 2-14. Starting in early June 2007, Plaintiff wrote a series of letters to Defendant Gregory – Upstate's Inmate Grievance Program ("IGP") Supervisor – and Defendant Bellamy – the IGP Director – criticizing Defendant Gregory's handling of Plaintiff's grievances. *See* Dkt. No. 79-3 at 17-27.[2]

On June 22, 2007, Plaintiff submitted for photocopying at the Upstate library a copy of DOCS Form 2133 relating to a past grievance, which Plaintiff had redacted to create a blank version of the form. *See* Dkt. No. 71-24 at ¶ 7. Form 2133 is typically used to set forth the ruling of a facility Superintendent on a grievance, and has a block for the Superintendent's signature and a space at the bottom for the inmate to indicate his intention to appeal the Superintendent's decision to the DOCS Central Office Review Committee ("CORC"). *See* Dkt. No. 71-12. Corrections Officer ("C.O.") Santamore, who is no longer a Defendant in this action, asked Defendant Gregory whether inmates were allowed to have blank copies of Form 2133, and Defendant Gregory advised that inmates were not allowed to possess that form in blank. C.O. Santamore, after consulting with his supervisor, decided to file an inmate misbehavior report against Plaintiff, charging him under a disciplinary rule that prohibits altering, forging, or counterfeiting any document, as well as distributing or possessing DOCS documents "without authorization." *See* Dkt. No. 71-24 at ¶¶ 7-9 & Exhibit "A" attached thereto. After the misbehavior report was filed against Plaintiff, but before the disciplinary hearing, Defendant Gregory confirmed with her IGP supervisors, including Defendant Bellamy, that inmates were not allowed to possess Form 2133 in blank. *See* Dkt. No. 71-19 at ¶¶ 8-11 & Exhibit "A" attached thereto.

---

[2] To avoid confusion, anytime the Court references a specific page number or range of pages for an entry on the docket, the Court will cite to the page number or numbers assigned by the Court's electronic filing system.

3

Defendant LaMora presided over Plaintiff's disciplinary hearing, at which C.O. Santamore and Defendant Gregory testified. Plaintiff argued that Defendant Gregory and others in the IGP were mistaken in their interpretation that DOCS' rules prohibit inmates from possessing Form 2133 in blank. *See* Dkt. No. 71-28 at 13-14, 21. Plaintiff claimed that DOCS inmates had been allowed to possess blank copies of the form in order to appeal the denial of a grievance to the CORC when the facility Superintendent did not review the denial on a timely basis. *See id.* at 24-25. Plaintiff asserted that he tried to secure blank copies of Form 2133 from the library so that he could appeal, in good faith, a prior grievance for which he had not yet received a Superintendent's ruling. *See id.* at 12-14.

Defendant LaMora, accepting the testimony of Defendant Gregory that inmates are not allowed to possess blank copies of Form 2133, found Plaintiff guilty on the misbehavior report, and sentenced him to 30 days of "keeplock" confinement, along with the suspension of certain other privileges. *See id.* at 28. Defendant Quinn reviewed and denied Plaintiff's appeal of the disciplinary action against him. *See* Dkt. No. 79-3 at 41-54.

Plaintiff claims that, as a result of the Progressive Inmate Movement System ("PIMS") in place at Upstate, he served significantly more than thirty (30) days of disciplinary confinement as a result of the misbehavior report against him. *See* Dkt. No. 79-1 at ¶¶ 45-48; Dkt. No. 79-3 at 35-40. Plaintiff alleges, in considerable detail, how the conditions of his confinement at Upstate amounted to an "atypical and significant hardship." *See* Dkt. No. 79-1 at ¶¶ 137-171.

Plaintiff wrote numerous letters complaining to Defendants Bellamy and Fischer that the imposition of disciplinary sanctions against him were contrary to DOCS' rules, were fundamentally unfair, and were the result of retaliation against him because of his extensive

4

grievance-related activities. *See* Dkt. No. 79-5 at 4-33. Both Defendant Bellamy and Defendant Annucci, the DOCS Executive Deputy Commissioner, replied to Plaintiff. They advised Plaintiff, in essence, that his recourse was limited to the appeal of the disciplinary action, which had already been decided, and that they would not or could not conduct any further investigation or take any other remedial action. *See id.* at 13, 19, 25, 33.

In his complaint, Plaintiff alleges that Defendant LaMora violated his due process rights because he was a biased hearing officer, who conducted the disciplinary hearing in an unfair and partial manner. Further, the complaint alleges that Defendants Annucci and Quinn denied Plaintiff due process by ratifying and failing to correct the violations allegedly committed by Defendant LaMora. *See* Dkt. No. 1 at 16. Moreover, the complaint alleges that Defendants LaMora, Gregory and Bellamy retaliated against Plaintiff because of his "protected grievance related activities" by pursuing the disciplinary charges against him. Plaintiff also claims that Defendants Annucci, Bellamy, and Quinn are liable for this purported retaliation because they ratified and failed to correct the conduct of Defendants more directly involved in the disciplinary proceeding. *See id.* at 15.

In his January 31, 2012 Amended Report-Recommendation, Magistrate Judge Baxter recommended that the Court grant in part and deny in part Defendants' motion for summary judgment. *See* Dkt. No. 85. Specifically, Magistrate Judge Baxter recommended that the Court deny without prejudice to renewal the summary judgment motion as to the due process claims against Defendants LaMora and Quinn and that the Court grant the motion as to all of the remaining Defendants and claims, including Plaintiff's retaliation claims against Defendants Gregory, Bellamy, LaMora, Quinn, and Annucci.

5

In their objections dated February 7, 2012, Defendants argue that Magistrate Judge Baxter erred in determining that Defendants LaMora and Quinn were not entitled to qualified immunity. *See* Dkt. No. 86 at 4. Specifically, Defendants argue as follows:

> The disciplinary rule at issue here, Rule 116.12, states in total: "An inmate shall not alter, forge or counterfeit any document. An inmate shall not distribute or be in possession of any departmental document without authorization." 7 NYCRR 270.2, Rule 116.12. At plaintiff's Tier II disciplinary hearing, Defendant LaMora was told by the grievance supervisor for the facility, Ms. Christine Gregory, a person who he reasonably expected would know, that the departmental form that plaintiff sought to possess in blank format (a Form 2133) was an "unauthorized" form for the plaintiff to possess in blank format. Dkt. No. 71-22, pp. 9-10. Ms. Gregory told Defendant LaMora that she had confirmed this with her supervisor in Albany. *Id.*, at p. 10. In fact, Ms. Bellamy, the Director of DOCCS Inmate Grievance Program, confirmed that this was a correct interpretation of the DOCCS' rule. Dkt. No. 711-11, at ¶¶ 9-13.

*See id.* at 5-6. Based on this, Defendants argue that Defendant LaMora acted reasonably in interpreting Rule 116.12 as prohibiting Plaintiff from creating a "blank" Form 2133, despite the fact that DOCS Directive 4040 requires inmates, in certain circumstances, to initiate an appeal to CORC on a blank Form 2133. *See id.* at 6-7. Defendants assert that Defendant LaMora is not a "grievance official expert" and that he reasonably relied on the grievance experts' interpretations of the rules. *See id.* at 7. Moreover, Defendants argue that Defendant LaMora could have reasonably concluded that Plaintiff believed that he was doing something knowingly wrong because he "did not simply 'ask permission before acting' – *i.e.*, he did not simply ask the grievance office at Upstate CF for copies of the form in question free of charge, as opposed to seeking to pay for altered forms to be copied in the prison library." *See id.* at 10. Finally, Defendants argue that, "[b]ecause it was not 'plainly incompetent' or a 'knowing[ ] violat[ion of] the law' for Defendant LaMora or Defendant Quinn to accept the DOCCS' grievance department's

6

expert opinions on which departmental forms were 'unauthorized,' qualified immunity should apply to protect them from a jury trial on this issue." *See id.* at 12 (citation omitted).

### III. DISCUSSION

**A.     Standard of review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Id.* at 36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment. *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.     Qualified immunity**

"The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

> For a constitutional right to be "clearly established" for purposes of determining whether an officer is entitled to qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Mollica v. Volker*, 229 F.3d 366, 370-71 (2d Cir. 2000) (quoting *Anderson v. Creiehton*, 483 U.S. 635, 638 (1987)) (internal quotations omitted). "Where the right at issue in the circumstances confronting police officers . . . was clearly established but was violated, the officers will nonetheless be entitled to qualified immunity 'if . . . it was objectively reasonable for them to believe their acts did not violate those rights.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quotation and other citation omitted).

"Although a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, the doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent." *Manganiello v. City of New York*, 612, F.3d 149, 165 (2d Cir. 2010) (citations omitted). "With respect to both the legal question and the matter of competence, the officials' actions must be evaluated for objective reasonableness. . . . That is, '[e]ven if the right at issue was clearly established in certain respects

9

. . . an officer is still entitled to qualified immunity if "officers of reasonable competence could disagree" on the legality of the action at issue in its particular factual context.'" *Id.* (quotations omitted).

The determination of whether an official's conduct was objectively reasonable is a mixed question of law and fact. *See Zellner*, 494 F.3d at 367 (citing *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)) (other citations omitted). "The ultimate question of whether it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, *i.e.*, whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court. However, '[a] contention that . . . it was objectively reasonable for the official to believe that his acts did not violate those rights has "its principle focus on the particular facts of the case."'" *Id.* (quotation and other citations omitted).

If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted). Any unresolved factual issues, however, must be resolved by the jury. *See id.* (quoting *Kerman*, 374 F.3d at 109) (other citations omitted). Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make the ultimate legal determination of whether qualified immunity attaches on those facts." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (quotation omitted); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (quotation omitted).

In the present matter, Magistrate Judge Baxter correctly determined that Defendants LaMora and Quinn are not entitled to qualified immunity. As discussed, Plaintiff was charged with violating Rule 116.12, which provides that "[a]n inmate shall not alter, forge or counterfeit any document." 7 N.Y.C.R.R. § 270.2(B)(17)(iii); *see also* Dkt. No. 71-25. In *Costantino v.*

*Goord*, 38 A.D.3d 659 (2d Dep't 2007), the petitioner was charged with violating Rule 116.12 because he created "a personalized grievance form which he sought to replicate in the library to enable him to file grievances." *Id.* at 659. The petitioner claimed that there was a shortage of grievance forms and that he sought to replicate the forms in the library to enable him to file grievances. *See id.* The hearing officer found the petitioner guilty, stating that "'[i]t is apparent that this form was forged and counterfeited solely for your use in submitting grievances.'" *Id.* The Appellate Division disagreed. Specifically, the court found that "[t]he terms 'forge' and 'counterfeit' carry with them an element of intent to defraud or deceive. . . . While the word 'alter' could conceivably embrace what the petitioner did to the grievance form in this case – indeed, by filling out any form a person is, in a sense, altering it – the word 'alter' as it appears in Rule 116.12 has rational meaning only by reference to the words with which it is associated." *Id.* at 660 (citations omitted). Therefore, the court found that the word "alter" as used in Rule 116.12 "carries the same intent to defraud or deceive as do its companion words 'forge' and 'counterfeit.'" *Id.* Since there was no evidence that the petitioner altered the form with an intent to deceive or defraud, the court vacated the charge. *See id.*

In *Farid v. Ellen*, an inmate was charged with violating, among other things, the prison's general ban on contraband as a result of a pamphlet criticizing New York's parole policies. *See Farid v. Ellen*, 593 F.3d 233, 237-38 (2d Cir. 2010). The defendants argued that the pamphlet constituted contraband because it violated the bylaws of the prison-approved organization, which included the plaintiff as a member, and which produced the pamphlet. *See id.* The Second Circuit agreed with the district court "that these rules were unconstitutionally vague as applied to Farid, both because they failed to give him adequate notice and because they failed adequately to constrain the discretion of the prison officials who had the power to impose them." *Id.* at 241.

11

The Circuit, however, disagreed that the defendants were entitled to qualified immunity and held that, "in light of *Chatin*, a jury could very well decide that it is unreasonable for a prison official to act on the belief that violation of a prisoner organization's internal by-laws can properly subject a prisoner to discipline under the prison's rules." *Id.* at 247.

As in *Farid*, in the present matter, Magistrate Judge Baxter correctly determined that "a jury could very well decide that it is unreasonable for a prison official to act on the belief that a lay inmate should have understood, based on a nuanced interpretation of various provisions of DOCS Directive 4040, that he could be disciplined for his attempts to obtain a blank copy of DOCS Form 2133." *See* Dkt. No. 85 at 23-24. According to section 701.9(f) of DOCS Directive 4040, "[i]f the superintend[e]nt fails to respond within the required twenty-five (25) calendar day time limit the grievant may appeal to CORC. This is done by filing a Notice of Decision to Appeal (Form #2133) with the inmate grievance clerk." *See* Dkt. No. 71-11 at ¶ 10. This language, which seemingly contradicts Defendants' position that Plaintiff was not allowed to possess this form in blank, could lead a jury to find Defendants actions unreasonable. This is especially true in light of the fact that there is no indication in the record that Plaintiff intended to do anything other than use the blank form to appeal an adverse ruling in a previous grievance and the fact that Plaintiff alleges that he and other DOCS inmates were often allowed to possess blank copies of Form 2133 to pursue grievance appeals.

Based on the foregoing, the Court denies Defendants' motion for summary judgment on this ground and accepts Magistrate Judge Baxter's Report-Recommendation and Order.

## IV. CONCLUSION

After carefully considering Magistrate Judge Baxter's Report-Recommendation and Order, Defendants' objections thereto and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's January 31, 2012 Report-Recommendation and Order is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 19, 2012
Albany, New York

Mae A. D'Agostino
U.S. District Judge